**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| NATIONAL MINING ASSOCIATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:10-cv-1220-RBW |
| | ) |
| LISA JACKSON, ADMINISTRATOR, | ) |
| U.S. ENVIRONMENTAL PROTECTION | ) |
| AGENCY, et al., | ) |
| | ) |
| Defendants, | ) |
| and | ) |
| | ) |
| | ) |
| SIERRA CLUB, | ) |
| 85 Second Street, 2nd Floor | ) |
| San Francisco, CA 94105; | ) |
| | ) |
| WEST VIRGINIA HIGHLANDS | ) |
| CONSERVANCY, | ) |
| PO Box 306 | ) |
| Charleston, WV 25321; | ) |
| | ) |
| COAL RIVER MOUNTAIN WATCH, | ) |
| P.O. Box 651 | ) |
| Whitesville, WV 25209; | ) |
| | ) |
| OHIO VALLEY ENVIRONMENTAL | ) |
| COALITION, | ) |
| PO Box 6753 | ) |
| Huntington, WV 25773-6753; | ) |
| | ) |
| KENTUCKIANS FOR THE | ) |
| COMMONWEALTH, | ) |
| P.O. Box 1450 | ) |
| London, Kentucky 40743; | ) |
| | ) |
| SOUTHERN APPALACHIAN | ) |
| MOUNTAIN STEWARDS, | ) |
| 511 West Main Street | ) |
| Appalachia, VA  24216; | ) |
| | ) |

STATEWIDE ORGANIZING FOR          )
COMMUNITY EMPOWERMENT,            )
P.O. Box 479                               )
Lake City, TN 37769;                      )
                                                )
                          Movants.          )
_____)

**MOTION OF SIERRA CLUB, WEST VIRGINIA HIGHLANDS CONSERVANCY,
COAL RIVER MOUNTAIN WATCH, OHIO VALLEY ENVIRONMENTAL
COALITION, KENTUCKIANS FOR THE COMMONWEALTH, SOUTHERN
APPALACHIAN MOUNTAIN STEWARDS, AND STATEWIDE ORGANIZING FOR
COMMUNITY EMPOWERMENT
TO INTERVENE AS DEFENDANTS**

Pursuant to Federal Rules of Civil Procedure 24(a), (b), (c), and Local Rule 7(j) of this

Court, Sierra Club, West Virginia Highlands Conservancy, Ohio Valley Environmental

Coalition, Coal River Mountain Watch, Kentuckians for the Commonwealth, Southern

Appalachian Mountain Stewards, and Statewide Organizing for Community Empowerment

(collectively, "Movants") hereby move this Court for leave to intervene in this proceeding as

defendants.  Movants seek intervention as of right under Rule 24(a)(2), or, in the alternative,

permissive intervention under Rule 24(b)(1).  In support of this motion, Movants submit the

accompanying Memorandum of Points and Authorities and the attached Exhibits.

Movants have conferred with counsel for the parties.  Government counsel has indicated

to Counsel for Movants that Defendants, including all Federal agencies and officials sued by

Plaintiff, take no position on Movants' intervention at this time.  Counsel for Plaintiff National

Mining Association has indicated that Plaintiff intends to oppose this motion.

Movants also respectfully request that the Court rule on this motion as soon as possible.

A prompt ruling would allow Movants to participate in the briefing schedule initially established

by this Court. (Dkt. 11a).  This schedule set October 20, 2010 as the deadline to file an

opposition to the Plaintiff's motion for a preliminary injunction, November 1, 2010 as the deadline to file any reply, and November 5, 2010 as the hearing date.

Pursuant to the procedure set forth in Rule 24(c), Movants state the following as grounds for this Motion to Intervene:

1.     This action is a challenge by a mining industry trade association to an interagency review process and policy documents released by the federal agency defendants to facilitate the agencies' Clean Water Act duties.  These documents state that they aim to encourage compliance with existing law and regulations and to coordinate the exercise of federal agencies' authority regarding permitting of fill discharges into waters by Appalachian surface mining operations. Plaintiff seeks to prevent the defendant agencies from communicating with one another or analyzing relevant information during their decisionmaking process, by asking this Court to enjoin the cooperative interagency review before either agency has taken final action on permit applications which are themselves not before this Court.

2.     Movants satisfy each requirement for intervention of right, pursuant to Federal Rule of Civil Procedure 24(a): they claim an interest in the subject of this action; they are so situated that the disposition of the action may, as a practical matter, impair or impede their ability to protect that interest; their interest may not be adequately represented by parties to the case; and this motion is timely.

3.     Movants also satisfy the prerequisites for permissive intervention, pursuant to Federal Rule of Civil Procedure 24(b), because their defense and the main action share common questions of law and fact, and their intervention will not delay or prejudice the adjudication of any rights or defenses of the Parties.

Based on the grounds asserted in this Motion to Intervene and in the supporting Memorandum of Points and Authorities, Movants ask this Court to grant them intervention as of right pursuant to Federal Rule of Civil Procedure 24(a) or, in the alternative, to grant permissive intervention pursuant to Rule 24(b).

DATED: October 13, 2010                    Respectfully submitted,

/s/ Jennifer C. Chavez

Jennifer C. Chavez, D.C. Bar 493421
Emma C. Cheuse, D.C. Bar 488201
Stephen E. Roady, D.C. Bar 926477
EARTHJUSTICE
1625 Massachusetts Avenue, N.W., Suite 702
Washington, D.C. 20036-2212
Telephone: (202) 667-4500
Facsimile: (202) 667-2356
jchavez@earthjustice.org
echeuse@earthjustice.org
sroady@earthjustice.org

*Counsel for Movants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
)
NATIONAL MINING ASSOCIATION,  )
)
       Plaintiff,  )
)
       v.  )     No. 1:10-cv-01220-RBW
)
LISA JACKSON, ADMINISTRATOR,  )
U.S. ENVIRONMENTAL PROTECTION  )
AGENCY, et al.,  )
)
       Defendants,  )
)
   and  )
)
SIERRA CLUB, WEST VIRGINIA  )
HIGHLANDS CONSERVANCY,  )
COAL RIVER MOUNTAIN WATCH,  )
OHIO VALLEY ENVIRONMENTAL  )
COALITION, KENTUCKIANS FOR  )
THE COMMONWEALTH,  )
SOUTHERN APPALACHIAN  )
MOUNTAIN STEWARDS,  )
STATEWIDE ORGANIZING FOR  )
COMMUNITY EMPOWERMENT,  )
)
       Movants.  )
_____)

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS BY
SIERRA CLUB, WEST VIRGINIA HIGHLANDS CONSERVANCY, COAL RIVER
MOUNTAIN WATCH, OHIO VALLEY ENVIRONMENTAL COALITION,
KENTUCKIANS FOR THE COMMONWEALTH, SOUTHERN APPALACHIAN
MOUNTAIN STEWARDS, AND STATEWIDE ORGANIZING FOR COMMUNITY
EMPOWERMENT**

**INTRODUCTION**

      In this action, a mining industry trade association challenges an interagency review

process and policy documents used by the defendant agencies to facilitate their Clean Water Act

duties.  Plaintiff's suit seeks a judicial ruling to stifle valuable agency communication and prevent one expert agency from sharing relevant legal and scientific information with another agency, while these agencies consider potential action on proposed mine waste-dumping permits. Among other things, Plaintiff seeks an unprecedented, far-reaching ban on the U.S. Environmental Protection Agency's ("EPA") exercise of its fundamental authority.  The relief requested would disrupt the defendant agencies' ability to perform legally required duties, which include protecting Movants' interests in vulnerable Appalachian waterways and natural resources.  The requested relief would also threaten the legal and scientific integrity of an interagency review process in which the defendant agencies are currently considering impacts on these vital resources.  Movants Sierra Club, West Virginia Highlands Conservancy (WVHC), Coal River Mountain Watch (CRMW), Ohio Valley Environmental Coalition (OVEC), Kentuckians For The Commonwealth (KFTC), Southern Appalachian Mountain Stewards (SAMS), and Statewide Organizing for Community eMpowerment (SOCM) (collectively, "Movants") are national and local nonprofit conservation organizations that share common interests in maintaining and promoting the integrity of Appalachian waterways, mountains, and other natural resources that their members and their members' families regularly enjoy across Appalachia.  Movants seek intervention as defendants to protect their and their members' interest in allowing both the EPA and the U.S. Army Corps of Engineers ("Corps") to complete their duties without inappropriate interference by Plaintiff.

**BACKGROUND**

Plaintiff National Mining Association ("NMA") specifically challenges the interagency coordination process for preliminary review of pending permit applications for waste-dumping and other forms of stream disturbance and discharges associated with surface coal mining in

Appalachia, as described in policy documents released by the Corps and EPA.  Compl. ¶ 2  (Dkt.

1).  The challenged documents include policy guidance released by EPA ("April 2010

Guidance") after problems were found in the permitting process.  Guidance at 3 (Dkt. 10-3). This

guidance describes to field staff the need to consider relevant scientific information and to meet

existing legal requirements for surface mining.  *Id.* at 8.  The defendant agencies released these

documents as part of a joint effort to review and "to significantly reduce the harmful

environmental consequences of Appalachian surface coal mining operations, while ensuring that

future mining remains consistent with federal law."  Memo. of Understanding Among the U.S.

Dep't of the Army, U.S. Dep't of the Interior, and U.S. EPA at 2 (June 11, 2009) (Dkt. 13-2)

("Joint MOU").

　　　This case involves the government's review of permit applications sought under the

Clean Water Act for a particular surface coal mining practice, generally known as mountaintop

removal mining, which has led to the destruction of an estimated 2,000 miles of Appalachian

mountain streams and caused irreversible damage to U.S. waters.  There could hardly be a better

example of an industrial practice where closer government scrutiny is warranted or where more

careful consideration of relevant scientific information is needed before permits for the practice

are issued.  Mining companies use explosives to blast away the top, side, or other upper areas of

a mountain to reach one or more coal seams, and then dispose of the resulting rock and other

mining waste by dumping it into a nearby valley or hollow.  The resulting waste dump, known as

a valley fill, permanently buries all waters, wildlife, and aquatic ecosystems and habitat

previously existing there.

　　　The scientific evidence of aquatic and ecological harm caused by mountaintop removal

mining and valley fills, pursuant to the types of permits addressed in the interagency review

process, is well-documented in recent peer-reviewed scientific literature and is the subject of

ongoing study. *See, e.g.*, Palmer et al., *Mountaintop Removal Mining Consequences*, 327 SCI.

MAG. 148 (Jan. 8, 2010). Valley fills destroy headwater streams, including the life they support

and the services they provide, at the upper reaches of Appalachian waterways, and cause impacts

downstream throughout the affected watersheds due to harm from pollutants discharged from the

fills, including sulfates and selenium, among others. *Id.* at 148-49. As a result, as noted by

Judge Wilkinson in dissenting from the denial of rehearing in a closely divided Fourth Circuit

decision involving particular individual mountaintop removal mining permits,

> West Virginia is witnessing in the Appalachian headwaters the long, sad decline that
> Virginia and Maryland have seen with the Chesapeake Bay. Once the ecologies of
> streams and rivers and bays and oceans turn, they cannot be easily reclaimed. More often
> than not, the waterway is simply gone for good.

*OVEC v. Aracoma Coal Co.*, 567 F.3d 130, 133 (4th Cir. 2009) (Wilkinson, J., dissenting from

denial of reh'g). Movants and their members have witnessed, and continue to witness,

significant devastation of these waters in West Virginia and in other Appalachian states.

Movants are nonprofit organizations that, individually and together, have a long history

of advocacy and litigation regarding mountaintop removal mining and valley fills, as well as

other activities to promote Clean Water Act ("CWA") enforcement. Movant Sierra Club is a

national conservation organization with local chapters and members in each of the Appalachian

states, including Kentucky, West Virginia, Virginia, Tennessee, and Pennsylvania. Declaration

of Ed Hopkins ¶¶ 4-5 (Ex. 5). Movants West Virginia Highland Conservancy ("WVHC" or "the

Conservancy"), Ohio Valley Environmental Coalition ("OVEC"), and Coal River Mountain

Watch ("CRMW") are nonprofit conservation groups headquartered in West Virginia with

thousands of members there. Decl. of Cindy Rank ¶ 4 (Ex. 3); Decl. of Vivian Stockman ¶ 3

(Ex. 1); Decl. of Debra Jarrell ¶¶ 3-5 (Ex. 4). Each of the other Movants is headquartered in a

different Appalachian state, with members locally centered there, including Kentuckians For The Commonwealth ("KFTC") in Kentucky, Southern Appalachian Mountain Stewards ("SAMS") in Virginia, and Statewide Organizing for Community eMpowerment ("SOCM") in Tennessee. Decl. of Steve Boyce ¶ 4 (Ex. 8); Decl. of Cathie Bird ¶ 4 (Ex. 12); Decl. of Jane Branham ¶ 4 (Ex. 10).[1]

Under the Clean Water Act, it is unlawful to discharge any pollutant into U.S. waters without a valid permit. 33 U.S.C. § 1311(a). This ban serves the primary purpose of the Clean Water Act: "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Therefore, to engage in the controversial method of mountaintop removal mining, companies seek fill permits under section 404 of the Clean Water Act, *id.* § 1344, and effluent discharge permits under section 402 of the Act, *id.* § 1342, among others.

The Corps issues section 404 permits under narrowly delineated authority allowing a discharge of fill material into U.S. waters if the discharge meets CWA standards. *Id.* § 1344(a). To issue a permit decision, the Clean Water Act requires the Corps to satisfy the Section 404(b)(1) Guidelines (40 C.F.R. Part 230), established by EPA. 33 U.S.C. § 1344(b)(1); *see, e.g.*, 33 C.F.R. § 320.2(f); 33 C.F.R. § 320.4(a)(1).

Congress has granted EPA broad authority to serve as the primary administrator, regulator, investigator, and enforcer of the Clean Water Act, while working in coordination with any other agencies given more circumscribed statutory authority. *See, e.g.*, 33 U.S.C. § 1251(d) (Congressional declaration), § 1318 (records and reports; inspections); § 1319 (enforcement); § 1361 (administration). Under section 404(c), EPA has the ultimate authority to veto a Corps

---

[1] Movants rely on the attached declarations to support this motion in their entirety. In addition to the specific citations Movants are prepared to provide additional examples.

permit decision, by denying or restricting the specification of any area as a disposal site.  33

U.S.C. § 1344(c); 40 C.F.R. Part 231.  Similarly, to restore and maintain water quality, even

where EPA has approved state programs to issue discharge permits or to set water quality

standards as part of the National Pollutant Discharge Elimination System ("NPDES"), EPA

retains ultimate authority to object to any section 402 permit.  33 U.S.C. § 1342(d).  EPA also

serves a unique oversight role to review environmental impact among all agencies under the

Clean Air Act and National Environmental Policy Act ("NEPA").  42 U.S.C. § 7609

(incorporating 42 U.S.C. § 4332(2)(C)).

In order for the Corps and EPA to fulfill their duties, interagency coordination and

consultation are important and valuable, as recognized and encouraged by the Clean Water Act

and applicable regulations, *see, e.g.*, §§ 1344(b), 1344(c), 1252, as well as the National

Environmental Policy Act, *see, e.g.*, 40 C.F.R. § 1501.6.  There is no mandatory deadline for a

permit decision by the Corps or for EPA's initiation of a section 404(c) veto, nor any time limit

on interagency coordination.  *Id.* § 1344(a), (c); *see also* 40 C.F.R. § 231.8.

**ARGUMENT**

Movants respectfully request that the Court grant their intervention pursuant to Federal

Rule of Civil Procedure 24(a), or, in the alternative, Rule 24(b), for reasons discussed below.

**I.      Movants Are Entitled to Intervene as of Right.**

Federal Rule of Civil Procedure 24(a) provides that:

> On timely motion, the court must permit anyone to intervene who . . .  claims an interest
> relating to the property or transaction that is the subject of the action, and is so situated
> that disposing of the action may as a practical matter impair or impede the movant's
> ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2).  Thus, this Court must grant intervention as of right if: (1) sought by

timely motion; (2) the applicant claims an interest relating to the property or transaction which is

the subject of the action; (3) the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest may not be adequately represented by existing parties.  *See Fund for Animals v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).

A.    **Movants' Motion to Intervene is Timely.**

The Court determines the timeliness of a motion to intervene "in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case."  *Smoke v. Norton*, 252 F.3d 468 (D.C. Cir. 2001).

This motion is timely.  Plaintiff filed suit on July 20, 2010.  (Dkt. 1).  On September 17, 2010, Plaintiff moved for a preliminary injunction. (Dkt .10). The Defendant agencies filed a motion to dismiss on September 27, 2010. (Dkt. 13).  This motion comes within 90 days of the filing of the initial complaint and less than one month after the initial parties' filings.  *Cf. County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 38, 46 (D.D.C. 2007) (Walton, J.) (granting motion to intervene filed more than 90 days after the complaint).  The case is currently at a preliminary stage at which no answer has yet been filed and no motion has been briefed.  *Cf. Appleton v. FDA*, 310 F. Supp. 2d 194, 195, 197 (D.D.C. 2004) (Urbina, J.) (motion filed after answer and within two months of notification of suit).  By order of this Court, opposition to the motion for preliminary injunction is due on October 20, 2010.  (Dkt. 11a).  If the Court were to grant intervention in the near future, Movants would have an opportunity to participate in this schedule.  This Court has not decided any merits issue, much less the core issues of the case.

Granting this intervention would cause no prejudice to any party.  Movants seek intervention, as discussed below and in the attached declarations, to protect their members' interests and preserve their rights and to advance the core mission of Movants.  If intervention is granted, Movants intend to brief issues jointly, together as Defendant-Intervenors, to serve the interest of judicial efficiency and respect the resources of all parties to this litigation.

**B.      Movants and Their Members Have Legally Protected Interests at Stake.**

As explained by the D.C. Circuit, "in the intervention area, the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) (quotation omitted).   Movants work to protect the waters and natural resources of Appalachia, including in their own states, for the benefit of their members and local residents with an interest in the integrity of waterways, the conservation of the biologically rich Appalachian Mountain range, and the protection of Appalachian life and culture that depend upon a healthy environment.  To this end, Movants have long urged the defendant agencies to fulfill all relevant scientific and legal requirements of existing law, including their duty to consider the types of information discussed in the April 2010 Guidance.  It is important to the core mission of each movant organization for the defendant agencies to issue valid permit decisions in order to protect the Movants' members' interests in the waters and natural resources addressed therein, and to uphold the integrity of the interagency process.[2]

Movants and their members have legally protected interests in effective interagency coordination to address the destruction caused by mountaintop removal mining.  Movants have

---

[2] *See, e.g.*, Hopkins Decl.  ¶¶ 4, 10-11 (Ex. 5); Stockman Decl. ¶ 3, 26 (Ex. 1); Rank Decl. ¶ 4, 6 (Ex. 3); Jarrell Decl. ¶ 4, 9 (Ex. 4); Boyce Decl. ¶ 4, 6 (Ex. 8); Branham Decl. ¶ 4, 7 (Ex. 10); Bird Decl. ¶ 4, 7 (Ex. 12).

numerous members who live in the affected Appalachian states and who have aesthetic, recreational, and health interests related to the waters that are the subject of the interagency permit review and policy documents (and, in turn, the pending permit applications under consideration) as described in the attached declarations.  For example, some of Movants' members and their families live and engage in recreation near these waters and downstream from these waters.[3]  Some members fish for sustenance or for sport in these waters, enjoy observing wildlife that rely on these waters for their survival, or drink water from these waters or waters that are connected with these waters.[4]  The pending permit applications, if issued without an appropriate interagency review or decision that satisfies all existing legal requirements, would harm these members and others with similar interests, by allowing mine waste-dumping to impair their use and enjoyment of affected waters.  These pending permit applications, although not before this Court, are the future decisions in which Plaintiff aims to interfere.  Movants seek intervention to oppose Plaintiff's request for premature judicial action affecting these decisions, under the guise of a challenge to the interagency process and related policy documents.[5]

Movants have demonstrated their interests in the interagency process and the need for review of scientific information and completion of legal requirements discussed in the April 2010 guidance in numerous ways.  For example, Movants Sierra Club, West Virginia Highlands Conservancy, Coal River Mountain Watch, and Ohio Valley Environmental Coalition, among other groups, submitted comments on the interagency permit review process at issue in this case,

---

[3] *See, e.g.*, Boldman Decl. ¶¶ 1, 3, 5-8 (Ex. 7); Mullins Decl. ¶¶ 1, 4, 7-8 (Ex. 11); Stockman Decl. ¶¶ 6, 11-23 (Ex. 1).

[4] *See, e.g.*, Handshoe Decl. ¶ 7 (Ex.9); Terry Decl. ¶¶ 6-7 (Ex. 13); Tawney Decl. ¶¶ 5-10 (Ex. 2); Shadowen Decl. ¶ 6 (Ex. 6).

[5] Notably, Plaintiff NMA does not challenge any of the final permit decisions already made and will have a full opportunity to challenge any future permit decisions.

urging the Corps and EPA to fulfill all CWA requirements, including by addressing impacts

shown in relevant scientific research.  *See* Decl. of J. Chavez; Comments of OVEC at al. (Sept.

25, 2009) (Ex. 15).  In these comments, Movants urged the agencies, in part, to address scientific

evidence of elevated conductivity and other water quality problems related to this type of mining

and to ensure full compliance with all CWA requirements.  Movants have also submitted

comments on many of the Corps' public notices of pending permit applications under

consideration by the defendant agencies.  *See* Declaration of Margaret Janes ¶¶ 4-6 (Ex. 14).

Through comments and other advocacy, Movants also have urged EPA and the Corps to

recognize that the CWA requires analysis of scientific and other types of information about

valley fill and mining-related impacts that EPA described as relevant in the April 2010

Guidance.  Movants also have filed petitions for agency action by EPA to enforce existing legal

requirements and to consider and prevent adverse environmental impacts of mountaintop

removal mining, after finding problems in the state permitting processes.[6]  Movants have a long

history of tracking and advocating for strong policies and decisions regarding valley fill permits,

and then engaging in litigation when, as has happened frequently in the past, the U.S. Army

Corps of Engineers has issued permits that allow serious harm to natural watercourses that the

---

[6] *See, e.g.*, Hopkins Decl. ¶ 7 (Ex. 5); Stockman Decl. ¶ 26 (Ex. 1); Jarrell Decl. ¶ 7 (Ex. 4).

Movants' members use and enjoy.[7]  It would severely harm Movants' interests to allow

Plaintiff's premature challenge to the interagency review process and guidance.

   This Court regularly allows nonprofit conservation organizations to intervene in similar

industry suits against the government brought to remove or weaken procedural or substantive

protections for the environment.[8]  This Court has previously granted movant Sierra Club

defendant-intervenor status in other cases that similarly implicated its and its members' interests

in waters that would be affected by proposed CWA section 404 permits or federal agency

application of the CWA section 404 requirements.[9]

---

[7] *See, e.g.*, *Ky. Waterways Alliance v. Johnson*, 540 F.3d 466 (6th Cir. 2009) (affirming district court ruling that EPA had violated CWA by approving state antidegradation regulations, in case brought by KFTC, Sierra Club and other groups); *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177 (4th Cir. 2009), *reh'g en banc denied* 567 F.3d 130, 133-34 (4th Cir. 2009) (Michael, J., dissenting from denial of rehearing en banc, in case involving individual section 404 permit challenges brought by OVEC, WVHC and CRMW, because "the Corps has simply failed to do its job"); *id.* at 132-33 (Wilkinson, J., dissenting from denial of rehearing en banc, joined by Motz, J.); *Ohio Valley Envtl. Coal., Inc. v. Hobet Mining, LLC*, 2010 WL 2739990 (S.D. W.Va. 2010) (finding surface mining company had violated permit limits on selenium pollution, in case brought by OVEC, WVHC, and Sierra Club); *OVEC v. U.S. Army Corps of Eng'rs*, 674 F. Supp. 2d 783 (S.D. W. Va. 2009) (finding violation of notice requirements in permitting process in case brought by WVHC, CRMW, and OVEC to challenge the Corps' issuance of an individual mountaintop removal mining permit); *see also* Hopkins Decl. ¶ 6, 7 (Ex. 5); Stockman Decl. ¶ 26 (Ex. 1); Rank Decl. ¶ 5 (Ex. 3); Jarrell Decl. ¶ 6 (Ex. 4); Boyce Decl. ¶ 5 (Ex. 8).

[8] *See, e.g.*, *Am. Petroleum Inst. v. Johnson*, 541 F. Supp. 2d 165 (D.D.C. 2008) (Friedman, J.) (Sierra Club intervened as defendant in industry challenge to EPA regulatory definition of "navigable waters"); *Montanans For Multiple Use v. Barbouletos*, 542 F. Supp. 2d 9 (D.D.C. 2008) (Hogan, J.) (Sierra Club intervened as defendant in challenge to forest management activities by U.S. Forest Service); *Am. Forest Res. Council v. Hall*, No. 07-0484 (JDB), 2007 WL 1576328 (D.D.C. May 29, 2007) (Sierra Club and other conservation groups intervened as defendant in industry action seeking a new rulemaking to remove protection from a federally protected species).

[9] *See, e.g.*, *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 453 F. Supp. 2d 116 (D.D.C. 2006) (Leon, J.) (intervention of Sierra Club in industry challenge to regulations for nationwide permits to fill wetlands under § 404); *Am. Mining Congress v. U.S. Army Corps of Eng'rs*, 120 F. Supp. 2d 23 (D.D.C. 2000) (Harris, J.) (intervention of Sierra Club in § 404 regulatory challenge).

**C.    If Successful, Plaintiff's Action Would Impair Movants' Interests.**

Plaintiff seeks a sweeping injunction to prevent the Corps from considering EPA concerns and to prevent EPA from exercising fundamental authority, including through communicating at all with the Corps about pending permit applications at any time "during the Section 404 permitting process," Compl. ¶ 107.  *See also id.* (prayer for relief nos. 7-8); Pl.'s Mot. for Preliminary Injunction (filed Sept. 17, 2010) (Dkt. 10).  Remarkably, Plaintiff complains of letters sent between the agencies "expressing concerns" about pending permit applications. Compl. ¶ 52.  Plaintiff also challenges EPA's April 2010 Guidance, *id.* ¶ 72, which provided "observations from both ongoing program oversight and a focused Permit Quality Review of permits" to its own staff, Guidance at 8 (Dkt. 10-3).  On top of that, Plaintiff seeks a judicial order to compel the Corps to issue permit decisions pursuant to arbitrary timelines not established by law or regulation. Compl. ¶ 100-105; *id.* at 39 (prayer for relief no. 8). In sum, Plaintiff seeks court orders that would limit agency discretion and significantly interfere with the agencies' ability simply to do their job by considering and preventing environmental impacts at a time the agencies deem appropriate in their decisionmaking process.

Such relief would impair Movants' interests.  The requirements each agency must address during the course of their permit decisionmaking process are designed to protect Movants' and their members' interests in a full review and prevention of significant degradation or unacceptable impacts to waterways.  *See, e.g.*, 40 C.F.R. § 230.10(b), (c) (barring the issuance of any permit that would cause or contribute to a violation of any water quality standard or that would cause or contribute to "significant degradation" of U.S. waters); *id.* § 230.1(c) (citing CWA purpose to restore and maintain integrity of waters).  Plaintiff's requested interference would undermine the agencies' process and their ability to protect waters and Movants'

members' interests in those waters.  The ability of the agencies to communicate with one another and to provide relevant scientific information, such as that described in the April 2010 Guidance, is vital "to ensure more timely, consistent, transparent, and environmentally effective review of permit applications under existing law and regulations," Joint MOU at 4 (Dkt. 13-2).

The disruption likely to occur if Plaintiff succeeds would be extreme, ranging from a ban on letters and similar communication between EPA and the Corps prior to EPA's decision on whether to initiate a permit veto process, to the vacatur of field guidance issued to EPA's own staff urging them to follow existing law, to an order compelling the Corps to issue permit decisions by an arbitrary deadline absent any legal duty to do so.  Barring or reducing EPA's scrutiny of permit applications and preventing or undermining EPA, Corps, or state review of critical scientific information would likely result in ill-considered permit decisions of dubious legality.  This would, in turn, cause harm to Movants' interests in affected waters.  Frustrating EPA review and making it more difficult for EPA to take future action to review permits and – where necessary – to consider proposing a permit veto under section 404(c) also threatens Movants' interests in the quality of the interagency review process and in having the agency with the greatest environmental enforcement experience – EPA – be able to exercise its ultimate authority to protect waters.

If Plaintiff succeeds, Movants also will likely need to expend additional time and resources to engage in advocacy and help their members address permitting impacts, such as by investigating and possibly filing new lawsuits that they would not otherwise have had to bring to sue the Corps for issuing unlawful permits.  *See, e.g.*, Hopkins Decl. ¶ 11 (Ex. 5).  Once a harmful valley fill permit has issued, it is often difficult or impossible for Movants to bring suit in time to seek corrective action before irreparable harm of filling waters has occurred.  Even if

Movants could reverse an unfavorable ruling here by bringing a separate, future lawsuit, "there is no question that the task of reestablishing the status quo if the [Plaintiff] succeeds in this case will be difficult and burdensome." *Fund for Animals*, 322 F.3d at 735 (granting defensive intervention to support government agency even where intervenor-applicant was not barred from future corrective action).

### D.   Movants' Interests May Not Be Adequately Represented by Defendants.

The burden on a party seeking intervention to demonstrate inadequate representation "is not onerous." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986).  Movants need only show "that representation of [the party's] interest 'may be' inadequate, not that representation will in fact be inadequate." *Id.* (quoting *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (requiring "minimal" showing)).  None of the current parties adequately represents Movants' interests in this matter.

First, Plaintiff's objectives in this suit plainly conflict with Movants' interests in having the agencies complete their duties, including an effective consideration of scientific information regarding applications to bury Appalachian streams with mining waste.  Second, in strategy and briefing of this case, Movants cannot rely on EPA or the Corps to represent their interests.  As government entities, each agency serves additional constituencies of the public who may have interests that differ from those of the Movants.  *Cf. Dimond*, 792 F.2d at 192-93 (finding an agency "would be shirking its duty were it to advance [an individual's] narrower interest at the expense of its representation of the general public interest").  That is true for the Corps in particular, as the Movants have found it necessary in the past to sue the Corps due to its issuance of numerous prior permits that contained problems similar to those that the interagency process

and April 2010 Guidance sought to address.[10]  The Corps' mere participation in an interagency

review process does not show that it has changed course substantively to protect Movants'

interests in waters and natural resources in this litigation.

Movants' expectation that EPA will enforce the Clean Water Act, based in part on its

environmental mission and the specific duties entrusted to EPA by law, *see, e.g.*, 33 U.S.C. §

1251(d); *id.* § 1344; 42 U.S.C. § 7609, does not give Movants the ability to rely solely on EPA to

defend their interests.  "Although there may be a partial congruence of interests, that does not

guarantee the adequacy of representation." *Fund for Animals*, 322 F.3d at 736-37 (granting

intervention where federal defendant and movant's interests "might diverge during the course of

litigation").  Moreover, even if there were complete congruence between EPA and Movants,

government counsel does not represent EPA alone, but also jointly represents the Corps and its

potentially divergent interests.  In sum, no existing party represents the nonprofit conservation or

local Appalachian perspective brought by Movants and their members.

## II.    Alternatively, Movants Request Intervention by Permission.

If this Court does not grant Movants intervention of right, Movants request, in the

alternative, that the Court grant permissive intervention.  Federal Rule of Civil Procedure 24(b)

provides that: "On timely motion, the court may permit anyone to intervene who . . . has a claim

or defense that shares with the main action a common question of law or fact."  FED. R. CIV. P.

24(b)(1).  The rule further states that, "[i]n exercising its discretion, the court must consider

whether the intervention will unduly delay or prejudice the adjudication of the original parties'

rights."  FED. R. CIV. P. 24(b)(3).

---

[10] *See, e.g.*, Hopkins Decl. ¶ 6 (Ex. 5); Stockman Decl. ¶ 26 (Ex. 1); *see also* cases cited, *supra* note 7.

Movants merit, at minimum, permissive intervention.  First, as demonstrated above, no significant events have yet occurred in this case and Movants' motion is timely.  Movants do not bring new claims.  They intend directly to oppose claims and requests for relief made by Plaintiff in this action and to offer defensive arguments that share central questions of law raised by this case.  Movants' intention to file joint briefs and request to join the established schedule demonstrate that they will cause no prejudice or undue delay to the parties.  If intervention is granted, Movants intend to respect this Court's efficient adjudication of the case.

Movants seek intervention to ensure that this Court is able to hear a key perspective on the issues involved in this case that may aid the Court's review.  Movants have gained particular knowledge and expertise from serving the Appalachian region and their communities for years, across different Administrations, and offer a perspective broader than the pursuit of a short-term interest such as financial profit.  Further, Movants seek to participate in part because they have made organizational commitments to protect the communities and the conservation welfare of their home states for the long run, as described in the attached declarations.  This perspective and experience would ground Movants' targeted briefing, and would complement the Government's defense.  *Cf.  Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977) (granting intervention for movant to protect own interests and where it "may also be likely to serve as a vigorous and helpful supplement to EPA's defense").  As such, Movants' briefing will focus on their core aim of preventing Plaintiff from unduly and prematurely interfering in the government's process for considering and, as required, addressing impacts to the natural resources of Appalachia.  Movants respectfully submit that granting their intervention would be consistent with this Court's and the D.C. Circuit's history of granting intervention to private entities, including nonprofit conservation groups, based on the distinct perspective they can

contribute to the Court's consideration of government policies that go to the heart of their organizational mission and directly affect their members' daily lives. *See, e.g.*, cases cited, *supra* note 8.

### III.   Movants Have Standing to Intervene as Defendants.

If the Court determines that Article III standing is required for Movants to intervene as defendants, Movants meet this standard for reasons already discussed and further elaborated below.[11]  Standing requires a showing of: (1) injury in fact; (2) a causal relationship between the injury and the challenged action, such that the injury can be fairly traced to the challenged action; and (3) the likelihood that a favorable decision will redress the injury. *Natural Res. Def. Council v. EPA*, 489 F.3d 1364, 1370 (D.C. Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  After finding that a single movant satisfies these standing requirements, the Court may grant intervention to all listed Movants.  *See, e.g.*, *Military Toxics Project v. E.P.A.*, 146 F.3d 948, 954 (D.C. Cir. 1998) (granting intervention to all co-applicants based on a finding for one named intervenor-applicant).

First, Movants have associational standing.  Under this standard, an association "must demonstrate that at least one member would have standing under Article III to sue in his or her own right, that the interests it seeks to protect are germane to its purposes, and that neither the claim asserted nor the relief requested requires that an individual member participate in the

---

[11] Movants have provided declarations in support of their motion although they do not believe that the Court's rules or precedent require an intervenor in support of defendants to provide evidence of standing at the motion to intervene stage. *Cf. County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 45 n.15 (D.D.C. 2007) (citing *Sierra Club v. EPA*, 292 F.3d 895, 900-901 (D.C. Cir. 2002)); *see also Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) ("requiring standing of someone who seeks to intervene as a defendant runs into the doctrine that the standing inquiry is directed at those who invoke the court's jurisdiction.").  If the Court requires the presentation of additional evidence, Movants are prepared to provide further evidence at an appropriate time.

lawsuit." *NRDC*, 489 F.3d at 1370 (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342-43 (1977)).  For reasons similar to those demonstrated above showing that Movants and their members satisfy the standard to intervene of right, Movants' members would have Article III standing in their own right.  *Cf. Fund for Animals*, 322 F.3d at 735 (holding that finding standing is sufficient to establish an "interest" under Rule 24(a)(2)).

Movants' members have legally protected recreational and aesthetic interests in waters affected by the permit applications and policy documents at issue here, as discussed in Part I.B, and the attached declarations.  Movants' members use and enjoy waters that will likely be harmed if Plaintiff succeeds in its efforts to undermine the interagency process and to prevent EPA from contributing its expertise to the permit decisionmaking process.  Movants' members ability to use and enjoy these waters will therefore be diminished, and the resulting injuries to the interests of Movants' members are sufficient to establish Movants' standing.  *Cf. NRDC*, 489 F.3d at 1371 (finding standing where organization's members "use or live in areas affected" by the action at issue "and are persons 'for whom the aesthetic and recreational values of the area'" would be lessened as a result of the action) (quotation omitted).  Protecting these interests is both germane and an important part of Movants' organizational missions.

This Court can redress, or prevent, this harm by denying Plaintiff's requested relief for the reasons discussed above.  Doing so would allow EPA to continue exercising its authority to participate in the permit review process and to coordinate appropriately with the Corps and state permitting agencies.  It would also ensure a greater level of environmental scrutiny by EPA and the Corps, the prohibition of which (as sought by Plaintiff) would cause at least "a distinct risk to a particularized interest" of Movants' members. *Cf. City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181, 1185-86 (D.C. Cir. 2007) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663, 668

(D.C. Cir. 1996) (en banc)).  To show procedural standing, Movants need not show that removal of a procedure would change the substantive result, but only that the procedures used are connected to the substantive result.  *Id.* at 1186.  There is no dispute here that the interagency coordination process and important existing requirements discussed in the April 2010 Guidance are connected to the final decision made on pending permit applications.

Movants also have standing in their own right, separate and apart from their members, due to their concrete, institutional interest in the subject matter of this action, the harm Plaintiff's suit causes or is likely to cause to Movants' interests, and this Court's authority to redress this harm by denying relief to Plaintiff.  *Cf. Friends of Animals v. Salazar*, 626 F. Supp. 2d 102, 113 (D.D.C. 2009) (Kennedy, J.) ("A plaintiff suffers an organizational injury if the alleged violation 'perceptibly impair[s]' its ability to carry out its activities.") (citing cases).  As part of their core mission, Movants expend resources and engage in frequent activities to educate the public and protect their members and local communities from the harm of mountaintop removal mining, including challenges to specific permits that would destroy waters in their local region.[12] Interference with Defendant agencies' duties –  including interference that could prevent them from scrutinizing and releasing information regarding impacts of pending permit applications – threatens Movants' ability to provide key information to their members and the public and to use this information to prevent or minimize harmful impacts from specific permits.  For instance, Sierra Club has had to expend resources in the past to research and publish information on scientific impacts of valley fill permits and mountaintop removal mining due in part to defendant agencies' failure to collect or publish this type of information.  Hopkins Decl. ¶ 9 (Ex. 5).

---

[12] *See, e.g.*, Hopkins Decl. ¶¶ 5, 6-9 (Ex. 5); Stockman Decl. ¶ 27 (Ex. 1).

Movants also are squarely within the "zone of interests" protected and regulated by the Clean Water Act, including section 404, 33 U.S.C. § 1344, and therefore satisfy the requirements for prudential standing.  *Cf. Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970).  The interests of Movants and their members are grounded in the waters protected by the Clean Water Act.  The considerations that the defendant agencies are bound by statute and by regulation to address during the permitting process are designed to protect Movants' interests. *Cf. Fund For Animals*, 322 F.3d at 734 n.6 (finding no bar to prudential standing for intervention where movant's interests coincided with statutory factors required to be taken into account ).

Congress established strong protections in the Clean Water Act that allow "any citizen" to challenge violations of the Clean Water Act, 33 U.S.C. § 1365(a), and allow the public to participate in the permit decisionmaking process. *Id.* §§ 1344(a), (c), 1251(d). These statutory provisions demonstrate that Congress intended there to be no bar to the ability of concerned citizens to participate in, and support, the agency defendants in a matter like the one at hand.  *Cf. Bennett v. Spear*, 520 U.S. 154, 165-66 (1997) (holding that a similar citizen suit provision demonstrates congressional decision to remove bar of prudential standing); *OVEC v. U.S. Army Corps of Eng'rs*, 674 F. Supp. 2d 783, 805 (S.D. W. Va. 2009) (finding a public right to mitigation-related and other "pivotal data" in the permitting process) (quotation omitted) (citing *Nat'l Wildlife Fed'n v. Marsh*, 568 F. Supp. 985 (D.D.C. 1983)).  Granting Movants and all other members of the public these statutory citizen participation and enforcement rights would mean little if Plaintiff could interfere with or enjoin the defendant agencies from following the law or considering all relevant science, as sought through the type of broad, collateral attack on the interagency review process or staff guidance that this case represents.

**CONCLUSION**

For all of the foregoing reasons, Movants Sierra Club, West Virginia Highlands Conservancy, Coal River Mountain Watch, Ohio Valley Environmental Coalition, Kentuckians For The Commonwealth, Southern Appalachian Mountain Stewards, and Statewide Organizing for Community eMpowerment respectfully request leave to intervene as defendants in case No. 10-cv-01-220-RBW, as of right, pursuant to Fed. R. Civ. P. 24(a), or alternatively, by permission, pursuant to Fed. R. Civ. P. 24(b), and D.D.C. Local Rule 7(j).

DATED: October 13, 2010                    Respectfully submitted,

                                           /s/ Jennifer C. Chavez

                                           Jennifer C. Chavez, D.C. Bar 493421
                                           Emma C. Cheuse, D.C. Bar 488201
                                           Stephen E. Roady, D.C. Bar 926477
                                           EARTHJUSTICE
                                           1625 Massachusetts Avenue, N.W., Suite 702
                                           Washington, D.C. 20036-2212
                                           Telephone: (202) 667-4500
                                           Facsimile: (202) 667-2356
                                           jchavez@earthjustice.org
                                           echeuse@earthjustice.org
                                           sroady@earthjustice.org

                                           *Counsel for Movants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2010, I caused a copy of the foregoing Movants'

Motion to Intervene as Defendants, Memorandum in Support, Declaration of Counsel, Exhibit

Nos. 1-15, Proposed Order, Proposed Answer, and Rule 7.1 Statement to be served on the

following counsel by First-Class Certified U.S. Mail:

Kirsten L. Nathanson
David Yolun Chung
John C. Martin
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Suite 1100
Washington, D.C. 20004
*Counsel for Plaintiff National Mining Association*

Kenneth C. Amaditz
Cynthia J. Morris
U.S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 23986
Washington, D.C. 20026-3986
*Counsel for Defendants*


DATED: October 13, 2010.


/s/ Jennifer C. Chavez