## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL MINING ASSOCIATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 10-cv-01220-RBW |
| LISA JACKSON, in her official capacity as | ) |
| Administrator, U.S. Environmental Protection | ) |
| Agency, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF NATIONAL MINING ASSOCIATION'S
## MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE

Katie Sweeney
Of Counsel
Karen C. Bennett, No. 477151
NATIONAL MINING ASSOCIATION
101 Constitution Avenue, N.W.
Suite 500 East
Washington, DC 20001
(202) 463-2600

John Martin, No. 358679
Kirsten L. Nathanson, No. 463992
David Y. Chung, No. 500420
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

ATTORNEYS FOR PLAINTIFF NATIONAL MINING ASSOCIATION

Dated: November 1, 2010

**INTRODUCTION**

Plaintiff National Mining Association ("NMA") opposes the motion to intervene filed by Sierra Club, West Virginia Highlands Conservancy, Coal River Mountain Watch, Ohio Valley Environmental Coalition, Kentuckians for the Commonwealth, Southern Appalachian Mountain Stewards, and Statewide Organizing for Community Empowerment (collectively, "Movants"). Movants seek to participate as Intervenor-Defendants in this action that NMA has filed against the U.S. Environmental Protection Agency ("EPA"), the U.S. Army Corps of Engineers ("Corps"), and various individual officials (collectively, "Federal Defendants") challenging actions by those agencies that have had a dramatic effect on the Clean Water Act ("CWA") permitting processes for NMA's coal mining members. Specifically, and as described in great detail in NMA's Complaint and Motion for Preliminary Injunction, NMA challenges and seeks vacatur of (i) the EPA and Corps actions that comprise the Enhanced Coordination Process ("EC Process"), which includes the permit screening process known as the Multi-Criteria Integrated Resource Assessment, and (ii) the April 1, 2010 Detailed Guidance Memorandum issued by EPA ("Guidance"). NMA's Complaint asserts a variety of claims against these actions, but in their essence, the claims all spring from the agencies' failures to follow the Administrative Procedure Act ("APA") in issuing and implementing the actions, in addition to their subverting the statutory scheme for water quality standards and permitting processes set forth in CWA Sections 303, 402, and 404. Through these actions, the agencies have procedurally and substantively altered the permitting process for NMA's members, causing untoward delay and substantial injury to NMA's members' economic and property interests.

Movants claim that they too have interests that are at issue in this action and that they would be harmed should NMA prevail in obtaining vacatur of the EC Process and Guidance.

Movants' request is an exercise in exaggeration.  Not only do Movants grossly mischaracterize the relief sought by NMA (claiming, for example, that NMA "seeks to prevent the defendant agencies from communicating with one another or analyzing relevant information during their decisionmaking process" (Motion at 3)), but they also engage in far-flung speculation on what will occur should NMA prevail.  Namely, they assume that should NMA prevail, unlawful and harmful permits will necessarily issue that will devastate specific waterways in which Movants' members claim an interest.  Movants also repeatedly attempt to couch NMA's claims as an attempt to interfere with or undermine the agencies' legally mandated permitting duties.  *See* Memorandum in Support of Motion to Intervene ("MTI") at 2, 9, 12-13, 18-19.  Such hyperbole is not only wrong as a matter of fact, it also fails to meet the standards for intervention as a matter of law.

In fact, NMA is seeking in this suit a reinstatement of the codified regulatory permitting processes and standards that were in place prior to the issuance and implementation of the actions challenged in this case.  Should Federal Defendants wish to institute the changes set forth in the EC Process and Guidance, they must follow proper APA procedures for rulemaking and they must not exceed their statutory authority under the CWA.  These realities are far removed from the articulated interests in Movants' request, which pertain to waterways in Appalachia, a fierce opposition to certain coal mining practices, and the ability to comment on and then litigate individual permits.  Movants also claim an interest in effective governance – an interest which is common to all citizens.  As explained in detail below, Movants' arguments fall short of the requirements of Federal Rule of Civil Procedure 24 and Article III of the Constitution.  Not only do Movants raise collateral issues that require several levels of speculation to even be tangentially linked to the agency actions at issue here, but they also ignore that Movants' public

participation interests in the coal mining permitting process are not at all disturbed by the

challenged actions or the outcome of this suit.  Further, Movants have a general interest in

opposing coal mining in Appalachia – an interest that would be prejudicial and unfair to NMA if

inserted into this litigation.  Accordingly, the motion to intervene should be denied.

<u>**ARGUMENT**</u>

Movants' motion to intervene should be denied because they are not entitled to intervene

as of right pursuant to Federal Rule of Civil Procedure 24(a), nor should they be afforded

permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).  Additionally,

Movants are unable to establish the jurisdictional requirement of standing – a necessary showing

for proposed intervenors in this Circuit.

**I.      MOVANTS ARE NOT ENTITLED TO INTERVENE AS OF RIGHT.**

As set forth in Movants' brief, Federal Rule of Civil Procedure 24(a) establishes the

requirements for intervention of right.  "As paraphrased by the D.C. Circuit, the rule indicates

that an applicant's right to intervene depends on (1) the timeliness of the motion; (2) whether the

applicant claims an interest relating to the property or transaction which is the subject of the

action; (3) whether the applicant is so situated that the disposition of the action may as a practical

matter impair or impede the applicant's ability to protect that interest; and (4) whether the

applicant's interest is adequately represented by existing parties." *Envtl. Def. v. Leavitt*, 329 F.

Supp. 2d 55, 65-66 (D.D.C. 2004); *see* MTI at 6-7.  As set forth below, Movants' interests do not

justify intervention as they are too generalized or are wholly collateral to this dispute between

NMA and the federal government.  Indeed, no outcome of this litigation could affect Movants'

ability to protect the interests they claim in any way.  Even if they could claim a relevant interest

in this case, Movants fail to explain why the government cannot adequately represent it.  Further,

Movants' rhetoric regarding their collateral interests only work to distract from the purely legal questions of administrative law that are driving this matter. Accordingly, and for the reasons set forth below, Movants should be denied intervention as of right.

### A. MOVANTS DO NOT HAVE AN INTEREST RELATING TO THIS ACTION.

Movants articulate a variety of interests they contend are "at stake" in this action: (i) protection of waters and natural resources of Appalachia; (ii) issuance of "valid" CWA permit decisions; and (iii) effective interagency coordination in the CWA permitting process. As explained below, the first two issues are not before the Court, and the third is too generalized to support intervention in this matter.

"The thrust of [Movants'] objection relates to an issue that is not properly before the Court" – namely, protection of waters and natural resources in Appalachia and the substantive terms and conditions of issued CWA permits for coal mining. *Nat'l Ass'n of Home Builders v. Evans*, No. 00-2799(CKK), 2002 U.S. Dist. LEXIS 25521, at *17 (D.D.C. Mar. 24, 2002). Such issues are several steps removed from the dispute that NMA has brought to this Court. Indeed, as described in great detail in each of the papers NMA has filed in this case, this action challenges various agency actions that have altered the processes and standards governing the evaluation of CWA permit applications for coal mining. NMA contends that the challenged agency actions – which relate solely to the interactions between NMA's members and the agencies – unlawfully amended the existing codified process without following proper APA procedures and further amended the existing process in substantive violation of the CWA and other statutes. Movants' claimed interest in issued permits and environmental protection springs from the result of the permit evaluation process, not the aspects of the process itself at issue in this case.

"[C]ourts have noted that 'an interest that is collateral to the action or contingent on the future occurrence of a sequence of events is insufficient'" for intervention as of right. *Evans*, 2002 U.S. Dist. LEXIS 25521, at *15 (denying intervention due to a collateral, rather than direct, interest in the action). Certainly an interest in the water quality in streams in Appalachia is collateral to the issues before the Court here. This Court must resolve only whether the agencies have violated the APA and other laws in creating a new process and standards for evaluation of NMA member CWA permit applications; those issues will not involve consideration or analysis of any particular environmental condition, as evidenced by the extensive papers filed by the parties to date on the motion for preliminary injunction and motion to dismiss. None of the legal issues presented to the Court in those papers relate to the current or future water quality condition of any Appalachian waterway, let alone the specific waterways identified by Movants in their declarations.

In addition, Movants acknowledge (at 9) that their interests are contingent on future events: "The pending permit applications, <u>if issued</u> . . . would harm these members and others with similar interests . . . . These pending permit applications, <u>although not before this Court</u>, are <u>the future decisions</u> in which Plaintiff aims to interfere." (emphasis added). Such "future decisions" will be made irrespective of the outcome of this litigation, *i.e.*, whether under the process that NMA has challenged or the codified process that NMA seeks to reinstate, Movants' interest in the substantive terms and conditions of issued permits and their effect on the environment does not change and is not implicated by this case. Therefore, Movants "have no legally cognizable interest" in this litigation. *Evans*, 2002 U.S. Dist. LEXIS 25521, at *10. *See also Leavitt*, 329 F. Supp. 2d at 68 (finding lack of a Rule 24(a) interest in challenge to remand

schedule, when the actual interest of proposed intervenor was in an upcoming rulemaking, in which proposed intervenor could participate irrespective of the outcome of litigation).

Movants also stretch to meet the Rule 24(a) test by claiming an interest in "effective interagency coordination" in the permitting review process, pointing to the comments they submitted on the EC Process. Having a generalized interest in agency coordination combined with a comment submission does not rise to the level necessary for intervention as of right. "[M]erely because one of the groups that seek intervention submitted comments in regard to the [EC Process] does not confer on that group, or the other Applicants, the right to intervene as to the issue of the [EC Process.]" *Evans*, 2002 U.S. Dist. LEXIS 25521, at *10. Indeed, Movants' interest in "effective interagency coordination" is one generally held by all citizens in effective governance. If such an interest qualified under Rule 24, there would be no limit on those who could express such an interest and participate in the litigation involving the government:

> [Movant] claims the common interest of all citizens in ensuring that their government agencies follow the law. As countless cases have held, however, such a generalized interest is insufficient to support standing, let alone intervention. If it did, the federal courts would be required to allow anyone with an interest however broad or universal to intervene in any lawsuit in which the government is a party.

*Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 948 (7th Cir. 2000) (affirming denial of motion to intervene because movant showed only a generalized interest in outcome of litigation); *see S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (affirming denial of intervention motion because "an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right."); *see also Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir. 1983) (affirming denial of intervention motion and noting that, "EDF's interest is not founded on the contracts at issue but rather is based on what it regards as enlightened public policy. In this suit, however, it is the

6

contracts and not public policy that are at issue."); *see also Keith v. Daley*, 764 F.2d 1265, 1269 (7th Cir. 1985) (affirming denial of intervention motion and noting that "a generalized interest in a 'sound educational system' is not enough to establish intervention as of right.").

Throughout Movants' discussion of their claimed interest, they emphasize various actions they have taken to urge the agencies to consider certain scientific and other information in evaluating permits, along with highlighting their extensive litigation track record when they disagree with the ultimate permitting result. "However, that disagreement is not part of this suit, nor should it be made part of this suit." *Evans*, 2002 U.S. Dist. LEXIS 25521, at *15. None of these prior actions translate into a cognizable interest here, as no aspect of this litigation hinders or affects Movants' ability to continue to engage in those advocacy activities – "nothing in this suit will eviscerate their right to comment" on future permit decisions. *Id.* at *11. Further, none of the cited activities involve or relate to the issues raised in this suit, *i.e.*, whether the agencies have lawfully modified the permitting process and standards for CWA permits for coal mining. The challenged actions in no way alter Movants' role in the permit evaluation process or any rights they have as a result of that process. In fact, none of the challenged actions implicate Movants at all. Movants therefore fail to meet the Rule 24(a) interest requirement.

**B.      THE OUTCOME OF THIS LITIGATION WILL NOT IMPAIR OR IMPEDE MOVANTS' ABILITY TO PROTECT THEIR INTEREST.**

Movants invent a parade of horribles in an attempt to show that their interests would be impaired should NMA prevail in this case. They contort the Complaint's claim for relief beyond recognition and erroneously portray an NMA-preferred permitting process devoid of input or involvement by EPA. Specifically, their overblown claims (at 12-13) include that:

- NMA seeks "to prevent the Corps from considering EPA concerns and to prevent EPA from . . . communicating at all with the Corps about pending permit applications at any time during the Section 404 permitting process."

- An NMA victory would lead to "a ban on letters and similar communications between EPA and the Corps . . . ."

- Such actions "would, in turn, cause harm to Movants' interests in affected waters" and force Movants to litigate over the "harmful" permits that would be issued.

Movants protest too much, overstate the relief NMA seeks, and engage in unfounded speculation on the substance and effect of yet-to-be-issued permits. First, their predicted outcomes ignore NMA's repeated recitations in the Complaint and elsewhere of EPA's existing statutory authority, which includes the right to provide comment to the Corps during the permit review process. Movants' citation to Paragraph 107 of the Complaint ignores the first clause of the quoted sentence, which specifically references EPA's authority in the Section 404(a) commenting process and the Section 404(c) process. No outcome in this litigation would remove EPA's authority to communicate with the Corps pursuant to Sections 404(a) and 404(c). NMA's contention is that the challenged agency actions fall wholly outside the codified processes that spring from the statutory authority and have been in place for decades. NMA seeks to reinstate the codified permitting process, not eviscerate it as Movants claim.

In addition, Movants assert a series of speculative assumptions to articulate some level of impairment. According to Movants (at 13), if NMA prevails, not only would EPA be removed from the permitting process, but the Corps would issue permits that would be unlawful and harmful to affected waters, forcing Movants to litigate against the permitting decisions. There is absolutely no factual basis to support such speculation about the substance of any future permits.

Nor is there any basis to assume that the Corps would issue permits that violate federal law or carry unlawful environmental impacts.[1]  Movants "ask[ ] the court to make many [] inferential leaps, tie them together with [an] inferential string, and come up with injury or impairment.  The court understands the theoretical possibility that [the Corps may issue permits that harm Movants].  But at this point such a possibility is pure speculation.  The court therefore denies [the] motion for intervention as of right." *Leavitt*, 329 F. Supp. 2d at 69.

An evaluation of what is actually likely to happen should NMA prevail illustrates that none of Movants' interests are impaired or even affected.  Should NMA prevail in the litigation, the agencies will either choose to revert back to the pre-January 2009 status quo, *i.e.*, adherence to the codified regulatory process, or the agencies will initiate an APA-compliant rulemaking to amend the existing regime and codify the actions challenged here that have been issued and implemented without APA notice and comment.  In either scenario, Movants' interests are preserved.  As noted above, nothing has changed Movants' existing rights to comment on pending CWA permit applications or to litigate permit decisions they view as adverse to their interests.  Similarly, should the agencies engage in a rulemaking, nothing "preclude[s] [Movants] from participating in the rulemaking or from challenging the final rule that emerges." *Leavitt*, 329 F. Supp. 2d at 68.

---

[1] This assumption is all the more tenuous in light of the recent Fourth Circuit opinion upholding the Corps' substantive decisionmaking on multiple issues in Section 404 permitting.  *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F. 3d 177 (4th Cir. 2009).  Indeed, while Movants tout their litigation prowess against the Corps, their efforts have substantively been rebuffed by the Fourth Circuit on several occasions.  *See, e.g., Bragg v. Robertson*, 72 F. Supp. 2d 642 (S.D. W.Va 1999); *rev'd Bragg v W. Va. Coal Ass'n*, 248 F. 3d 275 (4th Cir. 2001); *Kentuckians for the Commonwealth v. Rivenburgh*, 204 F. Supp. 2d 927 (S.D. W.Va. 2002); *rev'd* 317 F.3d 425, 443 (4th Cir. 2003); *Ohio Valley Envtl. Coal. v. Bulen*, 410 F. Supp. 2d. 450 (S.D. W.Va 2004); *aff'd in part, vacated in part by* 429 F. 3d 493, 496 (4th Cir. 2005); *Ohio Valley Envtl. Coal. v. U. S. Army Corps of Eng'rs*, 479 F. Supp. 2d. 607 (S.D. W.Va 2007);  *rev'd Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F. 3d 177 (4th Cir. 2009).

In short, there will be no affect on, let alone impairment of, Movants' interests if NMA prevails in this litigation.

### C.    MOVANTS' INTERESTS IN THIS CASE ARE ADEQUATELY REPRESENTED BY THE FEDERAL DEFENDANTS.

There is no reason that the Federal Defendants cannot adequately represent Movants' interests in this matter.  To the extent Movants can articulate any interest that is related to this litigation, it would be identical to that of the Federal Defendants: to uphold the EC Process and the Guidance.  Movants attempt to carry over their prior disputes with the Corps over issued permits in an attempt to show some divergence of interest here, but such historical discord between Movants and the Corps is wholly inapposite to the narrow set of issues presented in this litigation, *i.e.*, whether the EC Process and Guidance are procedurally and substantively lawful agency actions.  Here, "the federal defendants' only interest is in upholding the [challenged actions] . . . .  Indeed, there is no evidence of any disagreement of any sort between the federal defendants and [Movants] which might justify intervention.  Nor is there any showing of a conflict of interest or collusion between plaintiff[ ] and the federal defendants which might indicate that the federal defendants are not fully willing to vigorously support the [agency actions] in question."  *Humane Soc'y of U.S. v. Clark*, 109 F.R.D. 518, 520-21 (D.D.C. 1985) (denying intervention of right due to adequate representation by the federal government); *see also Sweet Home Chapter Cmtys. Or. v. Lujan*, No. 91-1468, 1991 U.S. Dist. LEXIS 17449 (D.D.C. Dec. 10, 1991) (same).  The relevant question should focus on congruence of interests regarding the narrow issues before the Court in this case, and not potential divergences in interest that may arise at some point in the future or that did arise in the past in other matters.

In fact, it appears that Movants share in the government's view on the justiciability of this matter.  At multiple points in their brief they refer to this case as a "premature" judicial action,

echoing the arguments that Federal Defendants have made in their motion to dismiss.  MTI at 9,

11, 16.  Thus, there is complete unity between Movants and the government on this score; both

believe this suit should be dismissed.  Therefore, even if Movants could articulate an interest

unique from the government's on the merits of the case, there is nothing that Movants can add to

the government's jurisdictional arguments that have not already been offered.  Their interests

mirror each other and, accordingly, Movants fail the Rule 24(a) test.[2]

Because there is no divergence in interests between Movants and the Federal Defendants

with respect to the issues raised in this case, *i.e.*, whether this case is justiciable and whether the

EC Process and Guidance are lawful agency actions, Movants cannot demonstrate that the

government cannot adequately represent their interests.

*       *       *       *

Movants fail to meet their burden on multiple prongs of the Rule 24(a) test.  Specifically,

their interest in the issues at stake in this case do not rise above a generalized concern about the

working and coordination of these federal agencies.  Their articulated interests in yet-to-be-

issued permits and in environmental protection in Appalachia fall outside the issues NMA has

asked this Court to decide.  No outcome of this case could harm Movants in any way; indeed,

their public participation rights may be enhanced if NMA prevails and the agencies perform the

public rulemaking process that NMA contends was both required and evaded.  And, finally, there

is no conflict between the Movants and the government over the issues in this case, including in

the threshold issues raised in the motion to dismiss.  This complete agreement demonstrates that

---

[2] This Court has also denied permissive intervention when the movant "fails to provide an independent ground for subject-matter jurisdiction" and "seeks to intervene for the very purpose of pressing the argument that the court lacks subject-matter jurisdiction."  *Leavitt*, 329 F. Supp. 2d at 69.

the government cannot more than adequately represent Movants' interests.  The request for intervention as of right should be denied.

## II.     MOVANTS' MOTION FOR PERMISSIVE INTERVENTION SHOULD BE DENIED.

In the alternative, Movants seek permissive intervention under Rule 24(b).  In making their argument, Movants repeat the themes from their Rule 24(a) request and highlight their "particular knowledge and expertise" on the Appalachian region and its natural resources.  Under the Rule 24(b) standard, "the court may permit intervention when the applicant's claim or defense has a common issue of law or fact with the main action, and where the court in the exercise of its sound discretion determines that intervention will not unduly delay or prejudice the adjudication of the case of the original parties."  *Humane Soc'y*, 109 F.R.D. at 521.  As explained below, Movants do not meet this standard.

For the reasons described in Part I.A. *supra*, Movants cannot demonstrate that they share a common question of fact or law beyond the generalized interest in "effective agency coordination," which is an interest shared with the federal government and the public at large.  Also, as explained above, the other interests they articulate are collateral to the specific issues of agency process and governing standards for permitting decisions that are before this Court.  *See, e.g., S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 804 (9th Cir. 2002) (affirming denial of permissive intervention under Rule 24(b) because proposed intervenors' concerns were "sufficiently different from the issues in the underlying action so as to not meet this factor of the test for permissive intervention."); *see also Wade v. Goldschmidt*, 673 F. 2d 182, 186-87 (7th Cir. 1982) (affirming denial of permissive intervention under Rule 24(b) because issue in litigation was "whether or not the governmental defendants have complied with certain federal

laws," and the court was "not in a position to act on the questions raised by applicants involving basic value judgments" about the agency's decision).

Movants wish to bring their "perspective" to this case, but that perspective is tangential to the issues before the Court and would only serve as a distraction from the core legal issues of this case.  Movants describe "irreversible damage," "devastation," and "serious harm" from mining practices in their communities.  MTI at 3, 4, 10.  Such claims are absent from the government's briefing and are wholly unnecessary to the disposition of the issues raised in NMA's Complaint.  Movants' claims are not relevant to this matter and indeed only work to prejudice NMA, which should not have to defend its members' lawful practices in an action where such practices are not at issue.  Such claims do not satisfy the Rule 24(b) standard.

This litigation is not seeking a judgment on coal mining in Appalachia; it is a challenge to the Federal Defendants' attempt to perform rulemaking through guidance and informal processes.  In fact, this challenge is not dependent on the substance of the regulated activity.  The issues presented would be identical if the agencies took these same actions against any type of regulated activity that is dependent on Section 402 and 404 permitting authorization.  "[T]he gravamen of [Movants'] problems relates to an issue that is collateral to the issue currently pending before the Court.  To permit [Movants] to permissively intervene would change the contours of this lawsuit and would be unfair to Plaintiff[ ]."  *Evans*, 2002 U.S. Dist. LEXIS 25521 at *18.  Accordingly, Movants' request for permissive intervention should be denied.

## III.   MOVANTS LACK STANDING TO INTERVENE AS DEFENDANTS.

This Circuit requires potential intervenor-defendants to establish standing.  *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003); *Nat'l Ass'n Home Builders v. U.S. Army Corps Eng'rs*, 519 F. Supp. 2d 89, 92 (D.D.C. 2007).  Like any party seeking to participate in an Article III action, a proposed intervenor must show: 1) injury-in-fact; 2) causation; and 3)

redressability.  *Fund for Animals*, 322 F.3d at 732-33 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  For many of the same reasons that they fail the Rule 24(a) test, Movants cannot establish any of the three standing requirements, either as associations or through their members.

Movants' claims of injury and causation are based on mischaracterizations of this action and are too speculative to satisfy Article III requirements.  Movants claim (at 18) that their members' "ability to use and enjoy" various waterways will be "diminished" because such waters "will likely be harmed if Plaintiff succeeds in its efforts to undermine the interagency process and to prevent EPA from contributing its expertise to the permit decisionmaking process."  As explained in Part I.B, *supra*, Movants dramatically misrepresent what NMA seeks.  Contrary to Movants' overstatements, NMA seeks to reinstate the lawfully codified permitting and interagency process.  NMA does not seek to bar EPA from any role in the Corps' or the states' permitting regimes.  Further, Movants speculate that any permits issued following an NMA victory before this Court will necessarily be harmful to the waterways of Appalachia.  Such exaggeration and speculation is not "sufficiently concrete" to satisfy Article III.  *See Nat'l Ass'n HomeBuilders*, 519 F. Supp. 2d at 93.

Movants next (at 18-19) attempt to articulate some claim of "procedural standing," citing a case that is inapposite to this litigation.  For a valid procedural injury sufficient to support Article III standing, Movants should point to a procedure mandated by statute that was not followed.  *See City of Dania Beach v. FAA,* 485 F.3d 1181, 1185 (D.C. Cir. 2007) (procedural injury found where agency failed to carry out National Environmental Policy Act requirements with respect to agency action); *City of Waukesha v. EPA*,  320 F.3d 228, 234 (D.C. Cir. 2003) (procedural injury found where agency failed to conduct cost-benefit analysis required by Safe

Drinking Water Act).  Here, the challenged agency actions are not required by statute; indeed the extra-legal nature of the EC Process and Guidance forms the essence of NMA's Complaint. There is no basis for procedural standing.

Next, Movants (at 19) point to their "concrete, institutional interest in the subject matter of this action," claiming an "organizational injury" to their ability to carry out "their core mission" to "educate the public and protect their members and local communities from the harm of mountaintop removal mining, including challenges to specific permits that would destroy waters in their local region."  Movants claim that an NMA victory that would interfere with the federal agencies' duties in "scrutinizing and releasing information" on pending permit applications would threaten "Movants' ability to provide key information to their members . . . ." As explained in Part I.B, *supra*, Movants' public participation rights are not and will not be affected at all by this litigation.  In fact, such rights might well be enhanced if NMA prevails. Further, Movants make no attempt to link their research, education, and other activities to the EC Process and Guidance challenged in this case; nor do they explain how vacatur of those actions and reinstatement of the codified permitting process would prevent them from sharing information with the agencies, educating their members, and researching issues of concern to them.  Irrespective of the outcome of this litigation, Movants will be able to comment on proposed permits, litigate issued permits, and take whatever other action they feel necessary to further their mission.  Accordingly, any articulation of causation or redressability of their purported "organizational injury" is wholly lacking.

Finally, Movants (at 20) invoke a very generalized claim in the "zone of interests" protected by the CWA and request prudential standing.  They point to their interests in the waters protected by the Act and a citizen's ability to participate in permit decisionmaking processes

under the Act.  As explained in multiple sections above, including Part I.A., these interests fall outside the core legal issues NMA has brought to this Court.  This case is not about any particular waterway (or even waterways in general), and this case does not alter, or even touch, the public participation regime in any CWA permitting process.  Movants have their comment rights, their public hearing rights, and their litigation rights, which are all unchanged regardless of the outcome of this suit.  This case is primarily driven by the APA – not the CWA – and no APA rights or interests of Movants are affected.

Therefore, in addition to falling far short on the Rule 24 requirements for intervention, Movants also fail to demonstrate the standing to participate that this Circuit requires. Intervention should be denied and this case should move forward with the parties actually affected by the challenged agency actions.[3]

## CONCLUSION

For the foregoing reasons, the Court should deny Movants' motion to intervene.

---

[3] In an illustrative contrast to Movants' claims, the government has moved to transfer three other lawsuits that have been filed against the agency actions challenged in this case, including a suit by the Kentucky Coal Association where the state of Kentucky has moved to intervene. *Ky. Coal Ass'n v. EPA*, No. 7:10-cv-125-ART (ED Ky. Filed Oct. 18, 2010).  The state of Kentucky, through its implementation of the Section 402 permitting process (which is directly affected by the substance and process instituted by the implementation of the Guidance), has a direct, concrete interest in the case that easily satisfies Rule 24 and Article III standing requirements.  Judicial review of the EC Process and Guidance implicate the interests of industry, the federal government, and the states subject to the Guidance; those are the proper parties for this litigation.

November 1, 2010                                    Respectfully submitted,


                                                   /s/ Kirsten L. Nathanson
                                                   John Martin, No. 358679
Katie Sweeney                                      Kirsten L. Nathanson, No. 463992
Of Counsel                                         David Y. Chung, No. 500420
Karen C. Bennett, No. 477151                       CROWELL & MORING LLP
NATIONAL MINING ASSOCIATION                        1001 Pennsylvania Avenue, N.W.
101 Constitution Avenue, N.W.                      Washington, DC 20004-2595
Suite 500 East                                     (202) 624-2500
Washington, DC 20001
(202) 463-2600

          ATTORNEYS FOR PLAINTIFF NATIONAL MINING ASSOCIATION